UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO. 5:18-CR-00053-2-TBR

UNITED STATES OF AMERICA                                                                  PLAINTIFF

v.

GREGORY SCOTT SALLEE                                                                      DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant Gregory Scott Sallee's Motion, through counsel, for Compassionate Release. [DN 64]. The Government responded, [DN 67], and Sallee replied, [DN 70; DN 72]. This matter is ripe for adjudication. For the reasons stated herein, Sallee's Motion for Compassionate Release, [DN 64], is **DENIED**.

**BACKGROUND**

On August 23, 2019, Sallee pled guilty to possessing and distributing methamphetamine. Subsequently, on December 5, 2019, Sallee was sentenced to a 120-month term of imprisonment and five years of supervised release. [DN 51]. Currently, Sallee has served approximately 32 months of his 120-month sentence. In the instant motion, Sallee argues that he is much more likely to acquire COVID-19 while in custody at FMC Lexington, and he is at a higher risk of suffering an adverse outcome should he contract the virus due to his underlying medical conditions. [DN 64 at 324].

**LEGAL STANDARD**

"The court may not modify a term of imprisonment once it has been imposed except that-

(1) in any case—

    (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction"

18 U.S.C.A. § 3582(c)(1)(A). "The First Step Act modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3852, such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences." *United States of America v. D-1 Duwane Hayes*, No. 16-20491, 2020 WL 7767946, at *1 (E.D. Mich. Dec. 30, 2020) (citing *United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020)). "Now, an imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request—whichever is earlier." *Jones*, 980 F.3d at 1105 (citing First Step Act of 2018, Pub. L. 115-391, Title VI, § 603(b), 132 Stat. 5194, 5239; 18 U.S.C. § 3582(c)(1)(A) (2020)).

In considering a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A), a district court shall engage in a "three-step inquiry." *United States v. Elias*, No. 20-3654, 2021 WL 50169, at *1 (6th Cir. Jan. 6, 2021) (citing *Jones*, 980 F.3d at 1101). First, "the court must 'find' that 'extraordinary and compelling reasons warrant a sentence reduction.'" *Id.* (citing *Jones*, 980 F.3d at 1101). Second, the court must "ensure 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* (citing *Jones*, 980 F.3d at 1101). Although the Sentencing Commission's policy statement on reductions in terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A) is recited at U.S.S.G. § 1B1.13, "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018 . . . [and] the policy statement does not wholly survive the First Step Act's promulgation." *Jones*, 980 F.3d at 1109 (citing U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018)).

Consequently, the Sixth Circuit in *Jones* decided that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, U.S. Sentencing Guideline § 1B1.13 is no longer an "applicable" policy statement in cases where an incarcerated person, as opposed to the Director of the Bureau of Prisons, files his or her own compassionate release motion in district court. *Jones*, 980 F.3d at 1109. Accordingly, district courts "may skip step two of the § 3582(c)(1)(A) inquiry" and have "full discretion . . . to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id.* at 1109, 1111. Thus, for now, district courts need not ensure that their ideas of extraordinary and compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) are consistent with the Sentencing Commission's idea of extraordinary and compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) as currently reflected at U.S.S.G. § 1B1.13.

Despite the Sixth Circuit's holding in *Jones*, this Court agrees with the United States District Court for the Eastern District of Kentucky in stating that "[w]hile the policy statement found in U.S.S.G. § 1B1.13 of the Sentencing Guidelines is not binding, it provides a useful starting point to determine whether extraordinary and compelling reasons exist." *United States v. Muncy*, No. 6: 07-090-DCR, 2020 WL 7774903, at *1 (E.D. Ky. Dec. 30, 2020). Congress provided no statutory definition of "extraordinary and compelling reasons" in section 3582(c)(1)(A). *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). Instead, Congress directed the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *United States v. Adkins*, No. 5:18-058-DCR, 2020 WL 7755629, at *1 (E.D. Ky. Dec. 29, 2020) (quoting 28 U.S.C. § 994(t)). Those descriptions are found in § 1B1.13 of the United States Sentencing Guidelines (policy statement) and the application notes to that section.

This policy statement describes four categories of extraordinary and compelling reasons. The first three relate to an inmate's serious medical conditions, age, and status as a caregiver. U.S.S.G. § 1B1.13, cmt. n.1(A)–(C). Specific medical conditions of a defendant constituting extraordinary and compelling reasons for a reduction in terms of imprisonment may include "terminal illness," "a serious physical or medical condition," "a serious functional or cognitive impairment," or "deteriorating physical or mental health because of the aging process." *Id.* The application note to U.S.S.G. § 1B1.13 further provides that the age of a defendant may be a necessary and compelling reason for a reduction in terms of imprisonment when "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.* The last category is a catch-all provision titled "Other Reasons," which reads: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13, cmt. n.1(D).

After considering whether extraordinary and compelling reasons warrant a sentence reduction and whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission, the district court proceeds to the third and final step of the analysis. If a sentence reduction is warranted under steps one and two, at step three, the court is to consider whether that reduction is defensible under the circumstances of the case by considering all relevant sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)); *Elias*, 2021 WL 50169, at *1 (citing *Jones*, 980 F.3d at 1101); *Jones*, 980 F.3d at 1108.

## DISCUSSION

### I. Exhaustion of Administrative Remedies

"Federal law has long authorized courts to reduce the sentences of federal prisoners facing extraordinary health conditions and other serious hardships, but only under very limited circumstances." *United States v. Beck*, --- F.Supp.3d. ----, No. 1:13-CR-186-6, 2019 WL 2716505, at *4 (M.D.N.C. June 28, 2019). Under the First Step Act, courts are now permitted to "consider motions by defendants for compassionate release without a motion" by the BOP Director "so long as the defendant has asked the Director to bring such a motion and the Director fails to or refuses." *United States v. Marshall*, No. 3:19-CR-00004-JHM, 2020 WL 114437, at *1 (W.D. Ky. Jan. 9, 2020).

On August 13, 2020, Mr. Sallee filed his request for Compassionate Release under § 3582(c)(1)(A) with the Warden, arguing that his multiple underlying medical conditions put him at a higher risk of serious complications from COVID-19. [DN 64-6 at 380]. More than thirty (30) days lapsed without response from the Warden. Accordingly, on October 26, 2020, Mr. Sallee, through counsel, submitted his Motion for Compassionate Release with the Court. [DN 64]. The Government did not object to the exhaustion requirement. [DN 67]. Thus, the Court finds that Mr. Sallee has properly exhausted his administrative remedies under the First Step Act.

### II. Extraordinary and Compelling Reasons

Where, as here, an incarcerated person files a motion for compassionate release directly, the district judge may skip step two of the § 3582(c)(1)(A) inquiry and has full discretion to define and determine whether an "extraordinary and compelling" reasons exists on his own initiative, without consulting the policy statement § 1B1.13. *Elias*, No. 20-3654, 2021 WL 50169, at *1 (citing *Jones*, 980 F.3d at 1111). Though the Court agrees that the policy statement still provides a useful starting point to determine whether extraordinary and compelling reasons exist, the Court can and does look to other reasons when ruling on a motion for compassionate release. The present motion represents

many filed by incarcerated persons around the country who have limited control of their environment, often cannot practice social distancing, and are concerned about contracting COVID-19. The Sixth Circuit acknowledged this concern and approved the following two-part test "for deciding when the concern of contracting COVID-19 becomes an extraordinary and compelling reason for compassionate release: (1) when the defendant is at a high risk of having complications from COVID-19 and (2) the prison where the defendant is held has a severe COVID-19 outbreak." *Elias*, 984 F.3d at 520 (quoting *United States v. Hardin*, No. 19-CR-240, 2020 WL 2610736, at *4 (N.D. Ohio May 22, 2020) (internal quotation marks omitted)).

Here, the Court finds that the risk posed to Mr. Sallee from his medical conditions compounded by the presence of COVID-19 at FMC Lexington may constitute such a reason, but ultimately compassionate release is not warranted under 18 U.S.C. § 3553(a).

In support of his motion, Mr. Sallee argues that the presence of COVID-19 at FMC Lexington and his own pre-existing medical conditions including cancer, stage III cirrhosis of the liver, hepatitis C, obesity, hypertension, sleep apnea, an enlarged spleen, Barrett's esophagus, and multiple calcified granulomas in the right lung are extraordinary and compelling reasons for his release. [DN 64 at 326; *see* DN 69-1 at 458]. Mr. Sallee also highlights the crowded conditions and lack of proper hygiene resources at the prison that make it "virtually impossible for individuals, such as Scott Sallee, to follow the recommendations of the Center for Disease Control or to maintain proper social distancing while incarcerated." [DN 64 at 326]. Along these lines, Mr. Sallee reports the following: he shares an 11 x 11 cell with another individual; he shares a bathroom with 20 people, however 130 people have access to it; he does have a mask, but no eye protection or gloves; he does not have access to alcohol based hand sanitizer or bleach; the soap dispensers are frequently empty; and BOP staff do not strictly comply with CDC recommendations. [*Id.* at 325–26]. In response, the government argues that Mr. Sallee has not been infected with the coronavirus, and "[h]e does not show that he has a greater risk of contracting the disease in prison that he would if he was released or that the Bureau of Prisons

Page **6** of **11**

could not treat him effectively if he had coronavirus." [DN 67 at 434]. In addition, the government states that the Court should not release Mr. Sallee because "he is a dangerous criminal and a flight risk." [*Id.*]

Mr. Sallee's BOP medical records confirm that he is a 52-year-old white male who suffers from several serious medical conditions, including cancer, stage III cirrhosis of the liver, hepatitis C, obesity, hypertension, possible sleep apnea, an enlarged spleen, Barrett's esophagus, and multiple calcified granulomas in the right lung. [*See* DN 69-1]. Specifically, Mr. Sallee's medical records indicate that he has undergone testing and procedures related to his Barrett's esophagus and cancer diagnosis. These same records indicate that there was no evidence of metastatic disease. [DN 69-1 at 460]. The adenocarcinoma appears related to his Barrett's esophagus, and is being treated by FMC Lexington and other health providers. [*Id.* at 471–73, 566, 575–76]. It also appears that Mr. Sallee's Hepatitis C has been previously treated with Harvoni and that treatment was successful. [*Id.* at 493]. It is unclear whether Hepatitis C remains an issue for Mr. Sallee. Mr. Sallee's medical records also show that he is "obese" according to CDC guidelines, with a body mass index ("BMI") of 30.8 kg/m2. [DN 69-1 at 573]. Due to his health conditions, Mr. Sallee has been on disability since 2013 and is incarcerated at the Federal Medical Center in Lexington, KY. [DN 64].

The Centers for Disease Control has stated that those who currently have cancer are at an increased risk of severe illness from COVID-19.[1] Those with chronic liver disease, "especially cirrhosis (scarring of the liver)," might be at an increased risk for severe illness from COVID-19; and those with high blood pressure (hypertension) may be at an increased risk.[2] Individuals with chronic lung disease and other scarring of the lungs may be at an increased risk for severe illness from

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#cancer.
[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html?CDC_AA_refVal=https% 3A% 2F% 2Fwww.cdc.gov% 2Fcoronavirus% 2F2019-ncov% 2Fspecific-groups% 2Fhigh-risk-complications.html.

COVID-19 as well.[3] The CDC's guidelines advise that individuals who are obese (BMI of 30 or above) are among those with the "strongest and most consistent evidence" of severe illness from COVID-19.[4] The more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19.[5] Moreover, statistically speaking, Mr. Sallee's age (52) puts him at a higher risk of serious illness or death from COVID-19 than other age groups even though his age does not place him in the most vulnerable age category. The CDC website states that individuals aged 50–64 are 4x more likely to be hospitalized and 30x more likely to die from COVID-19 compared to an 18–29-year-old.[6] Though Mr. Sallee's records indicate he has not tested positive for the virus, and he stated that he is taking medications for his conditions, research and guidance from the CDC clearly shows that Mr. Sallee is at a greater risk due to these conditions.

Mr. Sallee is currently housed at FMC Lexington in Lexington, KY. As of March 8, 2021, FMC Lexington had 1,126 total inmates (962 at FMC and 164 at the Camp). There were seven inmates and four staff members with confirmed active cases of COVID-19.[7] The BOP reports that nine inmates have died and 736 have recovered. Mr. Sallee has yet to test positive for the coronavirus. The Court recognizes that there has been a substantial COVID-19 outbreak at FMC Lexington with the number of active inmate cases peaking around 440 (approximately 40 percent of the population) during the week of January 11.[8] Fortunately, by the beginning of February the number of active inmate cases had decreased by more than 400 and over 400 inmates had recovered since the outbreak began in January. Even though there are still positive cases at FMC Lexington, there is no uncontrolled outbreak and the number of active cases has remained in the double and single digits

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#copd.
[4] *Scientific Evidence for Conditions that Increase Risk of Severe Illness*, CDC (Nov. 2, 2020), https://bit.ly/34aDRY6.
[5] *People with Certain Medical Conditions,* CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#diabetes (last updated Dec. 29, 2020).
[6] *See Centers for Disease Control and Prevention, Rate Ratios Compared to 18-29 Year Olds*, CDC, https://perma.cc/URL5-CLCP (last visited Feb. 3, 2021).
[7] https://www.bop.gov/coronavirus/ (accessed by the Court on March 8, 2021).
[8] https://www.bop.gov/coronavirus/ (accessed by the Court on Jan. 15, 2021).

with the BOP reporting seven active inmate cases on March 8. Moreover, Mr. Sallee's medical records show that the BOP has made significant efforts to provide meaningful medical care, and FMC Lexington is equipped to meet his medical needs. [*See generally* DN 69].

Based on relevant CDC guidelines and a review of Mr. Sallee's medical history, the Court agrees that Mr. Sallee's medical conditions including cancer, cirrhosis of the liver, obesity, Barrett's esophagus, and others, put him at an increased risk of severe illness from COVID-19 and may qualify as "extraordinary and compelling" reason for purposes of § 3582(c). However, the Court finds that other circumstances including the fact that he is housed in a federal medical center equipped to meet his needs and there is no current outbreak at FMC Lexington, significantly weaken Mr. Sallee's argument that extraordinary and compelling reasons exist. Regardless, the Court ultimately finds that compassionate release is not appropriate under 18 U.S.C. § 3553(a).

### III. 18 U.S.C. § 3553(a) Factors

Even when a defendant is statutorily eligible for a sentence reduction based on an "extraordinary and compelling reason," compassionate release is not necessarily appropriate. The Court must weigh the sentencing factors in 18 U.S.C. § 3553(a) to determine whether Defendant's sentence should be reduced. *Willis*, 382 F.Supp.3d at 1188. Pursuant to § 3553(a), a court imposing a sentence shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and

>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for [the applicable offense category as set forth in the guidelines];
>
> (5) any pertinent policy statement . . . by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the Court finds that compassionate release is not appropriate in this case. Mr. Sallee was sentenced to 120-months imprisonment for crimes involving the distribution of 50 grams or more of methamphetamine on two different occasions. In addition to the quarter pound of methamphetamine located during the search of Mr. Sallee's residence, law enforcement also seized 5 firearms and approximately $6,500.00 in currency. [DN 67 at 439; DN 40 at 158]. Additionally, the instant crime was committed while Mr. Sallee was released on bond for methamphetamine trafficking offenses in Livingston Circuit Court. In that case, Mr. Sallee possessed over 100 grams of methamphetamine and at least one firearm, in addition to numerous other illegal drugs. [DN 67 at 439; DN 40 at 165–66]. Mr. Sallee was unable to possess firearms during this time due to a prior felony conviction for burglary. [DN 40 at 162–63]. Moreover, no reason appears in the record to conclude that Mr. Sallee has been rehabilitated during the time he has been incarcerated, and without rehabilitation, his methamphetamine addiction poses a risk of danger and a return to criminal activity.

Accordingly, the Court finds that Mr. Sallee's pre-confinement "history and characteristics" do not support relief; and reducing his sentence to home incarceration would minimize the nature and

seriousness of the offense and would fail to afford adequate deterrence to criminal conduct. Likewise, granting Mr. Sallee's compassionate release when he has served only 32 months of his 120-month sentence would lead to unwarranted sentence disparities would be unjust in light of the serious nature of his crimes.

## CONCLUSION

For the above stated reasons, **IT IS HEREBY ORDERED** that Sallee's Motion for Compassionate Release, [DN 64], is **DENIED.**

**IT IS SO ORDERED.**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

March 11, 2021

CC: Counsel of Record