# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION

UNITED STATES OF AMERICA

v.                                                    No. 5:18-cr-53-BJB

GREGORY SCOTT SALLEE

* * * * *

## OPINION AND ORDER DENYING EARLY TERMINATION OF SUPERVISED RELEASE

Gregory Sallee pled guilty in 2019 to two offenses related to his involvement in a methamphetamine-trafficking conspiracy. Plea Agreement (DN 29) at 2. The Court sentenced him to a mandatory-minimum prison term of ten years, followed by five years of supervised release. Judgment & Commitment Order (DN 51) at 3–5.

Sallee's sentence as executed, however, looks much different from what anyone would've expected when that sentence was originally imposed. About three years into his prison sentence, during the Covid pandemic, the Bureau of Prisons released Sallee to home confinement. *See* 18 U.S.C. § 3621(b) (assigning the Bureau the task of designating place of imprisonment); *Pro Se* Motion (DN 107).[1] Then, in December 2024—about five years into the "custodial" portion of Sallee's sentence—President Biden commuted the remainder of his prison term. DN 129. But the commutation order expressly left "intact and in effect … the term of supervised release imposed by the court with all of its conditions and all other components of each respective sentence." *Id.*

That means Sallee has been on supervised release for about 18 of the 60 months contemplated in his sentence. And he has filed a motion for early termination of supervised release that would end that period early, too. DN 130. The Government opposes his motion. DN 133. The U.S. Probation Office has taken no position on whether early termination is appropriate; nothing from that Office or otherwise indicates that he has violated any of his release conditions.

---

[1] Judge Russell, the sentencing judge previously assigned to this case, denied a compassionate-release motion from Sallee earlier in 2021. See Order Denying Compassionate Release (DN 74). The parties appear to agree that BOP released him to home confinement on May 10, 2022. *See* Motion for Early Termination (DN 130); Government Response (DN 133).

1

Given obvious and important finality considerations, federal law limits the conditions under which a court may amend a sentence after imposing it. A court may alter a term of imprisonment, for example, only in response to an express congressional directive conditioned on "extraordinary and compelling reasons" warranting relief. *See* 18 U.S.C. § 3582(c); *United States v. McCall*, 56 F.4th 1048, 1053–54 (6th Cir. 2022) (en banc). Courts' leeway to terminate supervised release early is not as tightly bound. Congress has instructed courts to consider early termination if it "is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). And that analysis remains constrained by 18 U.S.C. § 3583(e), which requires that courts evaluate not only the post-sentencing interests of the defendant, but also many of the same considerations that governed the court's previous imposition of the sentence:

> The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)[2]—terminate a term of supervised release and discharge the

---

[2] The listed provisions are a subset of the familiar 18 U.S.C. § 3553(a) factors that guide the discretion of sentencing judges:

- § 3553(a)(1) – "the nature and circumstances of the offense and the history and characteristics of the defendant"
- § 3553(a)(2) & (B) – "the need for the sentence imposed … to afford adequate deterrence to criminal conduct"
- § 3582(a)(2)(C) – "to protect the public from further crimes of the defendant"
- § 3582(a)(2)(D) – "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"
- § 3582(a)(4) – "the kinds of sentence and the sentencing range established for— (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines …"
- § 3582(a)(5) – "any pertinent policy statement—(A) issued by the Sentencing Commission …"
- § 3582(a)(6) – "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"
- § 3582(a)(7) – "the need to provide restitution to any victims of the offense."

Judges confronting early-termination requests may not consider other enumerated sentencing factors, such as retribution, not included in this list. *See Esteras v. United States*, 606 U.S. 185, 194–95 (2025) (judges may not consider "the need to extract retribution for the defendant's underlying crime"); *United States v. Collins*, 171 F.4th 830, 835 (6th Cir. 2026) ("Missing from this list of factors [in § 3583(e)] is the retributive purpose of sentencing expressed in § 3553(a)(2)(A)."); Subsection (2)(A) refers to "the need for the sentence imposed

defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

18 U.S.C. § 3583(e).

Even then, early discharge from supervised release is not mandatory, but is left by statute to a district court's sound discretion: "The court *may*…." § 3583(e) (emphasis added); *Singh v. Rosen*, 984 F.3d 1142, 1151 (6th Cir. 2021) ("The word 'may' clearly connotes discretion.") (citation omitted).

For many years, a series of Sixth Circuit decisions suggested that early termination of supervised release was permissible only "in cases where the defendant shows changed circumstances—such as exceptionally good behavior." *United States v. Atkin*, 38 F. App'x 196, 198 (6th Cir. 2002).  But a trio of recent published decisions has seen in the statute's text more guidance than previously discerned regarding considerations a district court should consider in exercising that considerable discretion.

First, the Sixth Circuit rejected the "exceptionally good" standard as atextual. In so doing it abrogated its unpublished *Atkin* decision, explaining that "[t]he text does not make 'exceptionally good' conduct an absolute prerequisite to relief." *United States v. Hale*, 127 F.4th 638, 641 (6th Cir. 2025).

Second, the court of appeals held that district courts "must demonstrate" that they "considered the relevant § 3553(a) factors before denying an early termination motion." *United States v. Tavarez*, 141 F.4th 750, 758 (6th Cir. 2025).  There the court vacated a denial of early termination based on a U.S. Probation Office report observing that a defendant "had struggled to complete required monthly reports and had not yet served half his term of supervision." *Id.* (quotation marks omitted). "Neither of these reasons," at least as explained by the district court and perceived by the panel, "concerns any of the relevant § 3553(a) factors." *Id.*  And the district court failed to otherwise supply any explanation of those factors.

Third, earlier this year the court rejected a "district court's 'custom' not to consider motions for early termination of supervised release before at least fifty percent of a defendant's supervised-release term has elapsed." *United States v. Collins*, 171 F.4th 830, 835–37 (6th Cir. 2026).  The (re-)sentencing judge had justified

---

to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."

that custom as providing a uniform and efficient approach to assessing deterrence, rehabilitation, or protection of the public. But the court of appeals rejected use of "a blanket rule requiring defendants to complete a certain proportion of their supervised-release term without conducting an individualized assessment of the relevant § 3553(a) factors." *Id.* at 835. Again, the court emphasized that whatever a district court considers must be "t[ied] … to the relevant statutory factors." *Id.* at 837. *See also United States v. Zai*, No. 22-3371, 2022 WL 17832201, at *7 (6th Cir. Dec. 21, 2022) (rejecting order that gave "no indication that the district court considered the relevant § 3553(a) sentencing factors."); *United States v. Evans*, No. 25-5118, 2025 WL 2486607, at *2 (6th Cir. Aug. 26, 2025) (remanding early-termination denial that "made no mention of the required § 3553(a) factors.").

The upshot of the early-termination statute, as interpreted by these three decisions, makes a few points clear. District judges still enjoy discretion (presumably at least commensurate to the discretion wielded at sentencing) to apply the relevant statutory factors to the record before the court. *See, e.g.*, *Collins*, 171 F.4th at 834 ("We review for abuse of discretion a district court's denial of a motion for early termination of supervised release."). That decision must rest on the defendant's post-sentencing conduct, the interests of justice, and the relevant statutory sentencing factors. District judges may not, however, impose extra-textual requirements regarding a minimum term of supervision or a limitation of the defendant's relevant conduct to only "exceptionally good" conduct. What is less clear is the extent to which the sentencing judge's prior (and often recent) consideration of the § 3553(a) factors may be incorporated into the judge's decision on early termination. *See, e.g.*, *Collins*, 171 F.4th at 837. Nor the extent to which repetitive or redundant early-termination requests may compel the sentencing judge to take up the file again and apparently afresh.[3]

Mindful of those statutory principles, early termination is inappropriate here.

The nature and circumstances of the drug offenses at issue were quite serious. § 3553(a)(1). Sallee possessed and conspired to deal more than 50 grams of methamphetamine and more than 500 grams of a mixture containing methamphetamine. Plea Agreement (DN 29) at 2. When police raided his home, they found—in addition to methamphetamine—four shotguns and a rifle. Presentence

---

[3] This question is potentially quite significant to the Executive and Judicial branches alike, given that a defendant on supervised release isn't expressly limited in the frequency of early-termination requests. *See, e.g.*, *Hunter v. United States*, 608 U.S. ___ (Slip Op. at 4 n.1) (2026) (Thomas, J., dissenting) ("By law, Hunter can move for modification of his supervised-release conditions 'at any time.' 18 U.S.C. § 3583(e)(2)."); *Collins*, 171 F.4th at 837 ("Congress imposed a minimum time requirement of one year, and a court may not add to that time requirement without tying its decision to the relevant statutory factors.").

Report (DN 40) ¶ 15. Guns and drugs are obviously and often a deadly mix. This disturbing behavior was part of a pattern, moreover: Sallee bought drugs to deal on at least "14–15 different occasions." ¶ 16.

As to deterrence and public protection, §§ 3553(a)(2)(B) & (C), Sallee's motion for early termination sheds little light. Whether his original sentence had its intended deterrent and protective effects remains unclear from the paper record. Sallee says that "[h]e was incarcerated for a substantial period of time," Motion at 3, but he doesn't reflect on how much less time that was than the sentencing court had imposed—nor anything he took from his experience. Moreover, the apparent logic of the commutation order was that Sallee (and the others whose sentences were commuted) had avoided trouble while in home confinement, so they presumably could continue to do so while on supervised release.[4] Among the features of supervised release is the threat of revocation and accountability of supervision that supervisees face: if they violate the terms of their release, they may have to serve the rest of their term in prison. *See United States v. Jackson*, 541 Fed. Appx 668, 669–70 (6th Cir. 2013). And given the circumstances under which Sallee left prison early, the need for a significant deterrent and protective effect seems especially acute here. That Sallee has been out of custody for some time without causing any apparent danger to the public is of course some evidence that protection is less necessary now than it was at the time of sentencing. But surely continued supervision would add somewhat in that regard—especially given the higher-risk environments in which Sallee finds himself, working (commendably) with others who have struggled with substance abuse. *See* Motion at 3.

The remaining factors are less relevant to the Court's assessment. Sallee doesn't appear to seek or need any education, vocational training, medical care, or "other correctional treatment" (§ 3553(a)(2)(D)) that might be better provided on or off supervision. Similarly, the "kinds of sentences available" and "sentencing range" (§ 3582(a)(4)) would appear to merely restate the question regarding supervised release and early termination—viewed against the backdrop of the mandatory-

---

[4] *See* Executive Grant of Clemency (DN 129) ("I hereby commute the total sentence of confinement … leaving intact and in effect for each named person the term of supervised release imposed by the court with all of its conditions and all other components of each respective sentence."); Fact Sheet: President Biden Announces Clemency for Nearly 1500 Americans, WHITE HOUSE (Dec. 12, 2024) (archived at https://web.archive.org/web/20241212114352/https://www.whitehouse.gov/briefing-room/statements-releases/2024/12/12/fact-sheet-president-biden-announces-clemency-for-nearly-1500-americans/) ("The nearly 1,500 individuals who received commutations today have been serving their sentences at home for *at least* one year under the COVID-era CARES Act. These Americans have been reunited with their families and shown their commitment to rehabilitation by securing employment and advancing their education.").

minimum custodial sentence, mandatory-minimum term of supervision, and early release to home confinement. Nor do any policy statements (§ 3553(a)(5)) or restitutionary needs (§ 3553(a)(7)) bear on this request.

Last, denying the early-termination request would not appear to create any unwarranted sentencing disparities (§ 3553(a)(6)) given that Sallee received a mandatory-minimum sentence. But the significant benefit Sallee has already received from his periods of home confinement and clemency, and the clemency order's express indication that beneficiaries would continue their terms of supervised release, create some risk that early termination of supervised release early could itself introduce such an unwarranted disparity. *See, e.g.*, *United States v. Hornback*, No. 3:10-13, 2025 WL 3019614, at *2 (E.D. Ky. Oct. 29, 2025) ("[C]omplete termination of the defendant's supervised release approximately six years into a lifetime term of supervision could create sentencing disparities among similarly situated defendants."); *United States v. Vary*, 683 F. Supp. 3d 666, 670–71 (E.D. Mich. 2023) (similar reasoning for two-year reduction of ten-year term).

Against this statutory backdrop, Sallee's motion asserts that "the history of the defendant is not bad" and that "[h]e was incarcerated for a substantial period of time before he was released on home incarceration," which indicates that "he was punished for his crimes." Motion at 3. In his own assessment, "his conduct has been outstanding": "He has returned to the ministry, opened a sober living facility, and is contemplating a run for political office." *Id.*

That Sallee pastors a church that "opened a 15 bed men's faith based sober living facility in Hanson, Kentucky" suggests real progress. *Id.* at 2. As does his history of clean drug screening since he left prison. But by Sallee's own admission before he was sentenced, he has struggled with addiction off and on throughout his adult life and "will go long periods (years) without using but then once he starts back he is unable to stop." Presentence Report ¶ 68.

But even accounting for Sallee's time in home confinement (which the commutation order expressly distinguished from supervised release), he remains well short of the initial five years of supervised release that the sentencing court deemed necessary for his successful reintegration into the community. This doesn't trigger any hard-and-fast rule, of course, though "the proportion of [a] supervised-release term that a defendant has completed may be relevant to a court's determination of whether supervision remains necessary…." *Collins*, 171 F.4th at 837. And, as discussed above, Sallee's motion for early termination contains little reflection or contrition about the seriousness of his offense or its effect on others. Despite some good progress toward successful rehabilitation, the same factors that led the sentencing court to impose a five-year term of supervised release in the first place (as mandated by Congress) continue to support that supervision now.

6

***** 

Considering these factors individually and as a whole, coupled with "the conduct of the defendant released and the interest of justice," the Court finds that early termination of supervised release is not warranted. *See* 18 U.S.C. § 3583(e)(1). Sallee is correct that he is "eligible for early termination." DN 130 at 3. But under binding precedent, that is true of all defendants who have been on supervised release for at least a year. *See Collins*, 171 F.4th at 837. Apart from that, despite a serious offense and considerable recidivism, Sallee has benefited from the minimum possible custodial sentence, the minimum possible period of supervision, and an extraordinary early release from prison and commutation. And of the five reasons he offers in support—his time already spent on supervised release, his previous punishment, and his self-described "outstanding" conduct, "not bad" criminal history, lack of "any trouble whatsoever since his release"—none displaces the analysis above (nor the sentencing court's at the time of sentencing) about why a five-year term of supervised release is appropriate. Nor does the letter from his case manager at the halfway house where he completed his home confinement. DN 130-1. The Court commends Sallee for the progress he has made to date and encourages him to continue on that path as directed by his supervising officer.

## ORDER

The Court therefore denies Sallee's motion for early termination of supervised release (DN 130).

7